UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

In re:

SKIVIEW II, INC.,

Debtor.
_____/

Case No. 14-13218-JKO

Chapter 7

**TRUSTEE'S MOTION FOR ORDER (I) AUTHORIZING THE SALE OF 2415 NE 8th STREET, FORT LAUDERDALE, FLORIDA 33304, FREE OF LIENS, CLAIMS ENCUMBRANCES OR INTERESTS PURSUANT TO 11 U.S.C. §363 SUBJECT TO HIGHER AND BETTER OFFERS; (II) APPROVING CONTRACT OF SALE AND STALKING HORSE BIDDER; (III) ESTABLISHING BIDDING PROCEDURES; (IV) APPROVING FORM AND MANNER OF NOTICE; AND (V) SCHEDULING A HEARING DATE TO CONSIDER APPROVAL OF SALE**

Les S. Osborne, the Chapter 7 Trustee (the "**Trustee**") for the bankruptcy estate of Skiview II, Inc. (the "**Estate**"), by and through undersigned counsel and pursuant to 11 U.S.C. §§ 105(a), 363, 704, and Fed. R. Bankr. P. 2002, and 6004, and Local Rule 6004-1, hereby files this motion (the "**Motion**") for entry of an order: *(i)* authorizing the sale of 2415 NE 8th Street, Fort Lauderdale, Florida 33304, free of liens, claims encumbrances or interests pursuant to 11 U.S.C. §363, subject to higher and better offers; *(ii)* approving the contract of sale and the stalking horse bidder; *(iii)* establishing bidding procedures; *(iv)* approving form and manner of notice; and *(v)* scheduling a hearing date to consider approval of sale. In support of this Motion, the Trustee states as follows:

## JURISDICTION AND VENUE

1.    The Court has jurisdiction to consider this Motion and to grant the relief requested herein pursuant to 28 U.S.C. §157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory

predicates for this Motion are Sections 105 and 363 of Title 11, United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

1.      On February 11, 2014, Skiview II Inc., a Delaware corporation (the "**Debtor**") filed a voluntary petition under Chapter 11 of the Title 11 of the United States Code.

2.      On March 4, 2014, this Court entered an Order Directing the Appointment of a Chapter 11 Trustee (ECF No. 19). Shortly thereafter, the Office of the United States Trustee appointed Les S. Osborne as the Chapter 11 Trustee for the Debtor's Estate. *See* Appointment Of Chapter 11 Trustee and Setting of Bond (ECF No. 21).

3.      On May 1, 2014, this Court entered an Order Converting Case under Chapter 11 to Case under Chapter 7 (ECF No. 47). Shortly thereafter, the Office of the United States Trustee appointed Les S. Osborne as the Chapter 7 Trustee for the Debtor's Estate.

4.      The Debtor is the sole fee simple owner of interest in real property located in Broward County, Florida, which is identified as having the property address of: 2415 NE 8 St., Fort Lauderdale, FL 33304 (Parcel ID No. 5042 01 32 0600), and is legally described as follows:

> Lot 12, Block 4, SUNRISE, according to the map or plat thereof as recorded in Plat Book 28, Page 42, Public Records of Broward County, FL

(the " **Property**") (ECF No. 1).[1]

5.      As of the Petition Date, the Debtor valued the Property at $422,000. The Broward County Property Appraiser provided a 2014 valuation of the Property at $384,430.

6.      Records reflect that SunTrust Mortgage, Inc. has a secured interest by way of a first position mortgage against the Property in the approximate amount of $400,000 (the "**Secured Claim**").

---

[1]      A true and correct copy of a title search establishing Debtor's ownership of the Property and outstanding encumbrances shall be filed with the Court prior to any hearing on the Motion.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

7.      On May 20, 2014, the Trustee filed his Motion to Approve Listing Agreement for the Property, in addition to an Application to Employ Real Estate Professional, Jason Welt to market and sell the Property (the "**Motion to Approve Listing Agreement and Employment of Real Estate Professional**") (ECF No. 54).

8.      On May 29, 2014, the Court entered an Order granting the Motion to Approve Listing Agreement and Employment of Real Estate Professional (ECF No. 55).

9.      Shortly thereafter, Jason Welt listed the Property on the MLS listing and commenced several showings of the Property to potential purchasers.

## CONCISE STATEMENT OF  RELIEF REQUESTED

### Local Rule 6004-1[2]

10.      Subject to higher and better offers as set forth below, the Trustee proposes to sell the Property for $500,000 to IRA Resources FOB Kim L. Schmeling IRA[3] (the "**Stalking Horse Bidder**") who has submitted an earnest money deposit for the purchase of the property in the amount of ten percent of the purchase price, or $50,000 (the "**Sale**").  The proposed closing date is currently scheduled for seven (7) days post entry of a court order approving the Sale. The proposed sales contract (the "**Sales Contract**") is attached hereto and incorporated herein as **Exhibit A**.

11.      The Trustee will seek higher and better bids through the process described herein to obtain and select the highest and best bid for the Property (the "**Winning Bidder**") under the terms and bidding procedures ("**Bidding Procedures**") proposed herein.  If the Trustee receives

---

[2]      The Debtor does not have a policy of prohibiting the transfer of personally identifiable information.  As such the Sale does not implicate any such policy and a consumer privacy ombudsman is not required under § 332 of the Bankruptcy Code.  Records reflect only one Secured Claim, detailed above.

[3]      IRA Resources FOB Kim L. Schmeling IRA is not an insider of the Debtor.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

a qualified alternate minimum bid in an amount equal to or greater than $510,000, the Trustee shall conduct an private auction (the "**Auction**") at the offices of Akerman, LLP twenty-one (21) days from entry of an order approving this Motion.   Any party interested in purchasing the Property must file a notice of competing bid (the "**Competing Bid**") with the Bankruptcy Court, the Office of the United States Trustee, and the Chapter 7 Trustee no later than one (1) day prior to the Auction.   A competing bidder shall submit to the Chapter 7 Trustee a $50,000 good faith deposit, an offer,  in writing, in an amount greater than or equal to $510,000, and shall submit financial information, including redacted financial statements, demonstrating the financial wherewithal of the competing bidder to complete the Sale.  Minimum incremental bids are to be left to the discretion of the Trustee while conducting the Auction.  Competing bidders may not substantially deviate from the terms of the Sales Contract. If failure to consummate the Sale is the fault of the Winning Bidder, the Trustee on behalf of the Debtor's estate shall be entitled to retain the deposit.

12.     The Trustee requests a hearing (the "**Bid Procedures Hearing**") for the Court to consider entry of an order (the "**Bidding Procedures Order**"): *(i)* approving the Bidding Procedures, *(ii)* approving the form and manner of notice of the Bidding Procedures and the Sale Hearing, *(iii)* approving the Stalking Horse Bidder and the Sales Contract, *(iv)* scheduling a Sale Hearing; and (v) approving the sale of the Property to the Winning Bidder free and clear of all liens, claims, interests and encumbrances, if any, with such liens, claims, interests and encumbrances attaching to the proceeds of the sale (the "**Sale Order**"). The Trustee therefore proposes to submit the Sale Order at the Sale Hearing.

13.     The Trustee intends to conduct the Sale and Auction, if needed, as promptly as practicable, consistent with *(i)* requirements of Section 363 of the Bankruptcy Code, *(ii)* the Bid

Procedures; and *(iii)* the terms of the Sales Contract. Thus, by this Motion, the Trustee seeks approval to implement a four-step sale process, as follows:

a.   Bid Procedures Hearing proposed to be held on or about July 2, 2014, or such other date as set by the Court, at which the Trustee will seek, among other things, approval of the Bidding Procedures, as detailed herein;

b.   Trustee to continue soliciting Competing Bids from interested potential purchasers during marketing and due diligence period up until one (1) business day prior to the Auction following entry of the Bidding Procedures Order; in his discretion for cause shown, the Trustee may extend the deadline to qualify.

c.   If necessary, the Trustee shall conduct an private Auction for to evaluate Competing Bids at the offices of Counsel to the Trustee in order to obtain and determine the Winning Bidder(s) on the morning of July 23, 2014; and

d.   The Court shall hold the Sale Hearing after the conclusion of the Auction during the afternoon of July 23, 2014, to the extent the Court's calendar permits, or as soon thereafter as practicable, to consider entry of the proposed Sale Order.

14.   Following the approval of the Bid Procedures, the Trustee may thereafter establish such modified or additional Bidding Procedures, as the Trustee deems reasonably appropriate based on the circumstances; provided that such modifications and additions shall not be materially inconsistent with the Bidding Procedures contained herein. The Trustee may seek adjournment of the Sale or the Sale Hearing without further notice. The Trustee shall file with the Court appropriate notices of adjournment with respect to any such adjournment.

15.   At the Sale Hearing, the Trustee will establish that he has conducted appropriate sales efforts to expose the Property to a comprehensive and competitive sale process. As such,

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

Trustee submits that the schedule and time frames proposed by the Bidding Procedures will appropriately balance (a) the Trustee's objective need to conclude the Sale expeditiously, as against (b) the competing interests requiring adequate time to complete the thorough marketing of the Property and properly undertake the Auction and document the sale of the Property.

16.    **THE PROPERTY WILL BE SOLD, AS IS, WHERE IS AND HOW IS, WITH NO WARRANTIES, GUARANTEES OR REPRESENTATIONS, EXPRESSED OR IMPLIED OF ANY KIND OR NATURE.**

## RELIEF REQUESTED

17.    Through this Motion, the Trustee seeks entry of an order: *(i)* authorizing the sale of the Property free of liens, claims encumbrances or interests pursuant to 11 U.S.C. §363, subject to higher and better offers; *(ii)* approving the Stalking Horse Bidder and the Sales Contract; *(iii)* establishing Bidding Procedures; *(iv)* approving the form and manner of notice; and *(v)* scheduling a hearing date to consider approval of Sale.

**A.    The Sale and the Stalking Horse Bidder**

18.    The Trustee believes that the Sales Price is more than fair and reasonable considering the valuation of the property provided by the Debtor and the Broward County Real Property Appraiser, the fact that the property has been listed for sale with the general public, and considering the Trustee's estimation as to value and the Property's appraised value as determined by the Stalking Horse Bidder.  The Stalking Horse Bidder is not an insider of the Debtor, and the Sale and Sales Contract represents an arms-length transaction between the parties, made without fraud or collusion, and no attempt has been made by either party to take any unfair advantage of the other.  The Stalking Horse Bidder is purchasing the Property in good faith pursuant to 11 U.S.C. § 363(m).

19.     From the Sale proceeds, the Trustee proposes to pay the costs of the Sale, including reasonable attorney's fees, real estate commissions, and taxes. In addition, the Trustee proposes to pay all creditors that have an undisputed secured interest in the property, in order of priority, as of the date of closing. The Trustee asserts that, after the payment of the costs of the Sale and satisfaction of the Secured Claim, net proceeds will be realized from the Sale. For this reason, the sale is in the best interests of the Debtor, the Estate, creditors, and other parties in interest and should be approved.

20.     The sale of the Property is being made free and clear of any interest in the Property held by an entity other than the Estate pursuant to 11 U.S.C. § 363(f), as the Secured Claim is a lien and the price at which the Property is to be sold is greater than the aggregate value of the lien on the Property.

**B.     The Bid Procedures**

21.     Any party interested in purchasing the Property should serve a Competing Bid to the Chapter 7 Trustee and his undersigned counsel no later than one (1) day prior to the Auction. The competing bidder shall submit to the Trustee a $50,000 good faith deposit, an offer, in writing, in an amount equal to the Alternative Minimum Bid (defined below), and submit information demonstrating the financial wherewithal of the competing bidder to consummate the Sale.   Such   information shall include redacted financial statements evidencing the competing bidder's ability to procure the proposed purchase price for the Property.

22.     Competing bidders may not substantially deviate from the terms of the Sale Contract attached hereto as **Exhibit A**. The Trustee, in the Trustee's discretion, will determine if the competing bidder has submitted a qualified bid based on the terms of the

bid, and the competing bidder's financial ability to consummate the proposed purchase at the Alternative Minimum Bid price.

23.     The Alternative Minimum Bid is $510,000.  Minimum incremental bids are to be left to the discretion of the Trustee while conducting the Auction.

**C.     The Auction**

24.     If a qualified Alternative Minimum Bid is timely received by the Trustee, then the Trustee shall conduct an Auction at the offices of Akerman, LLP, 350 East Las Olas Blvd., Suite 1600, Fort Lauderdale, Florida, 33304.

25.     The Auction will take place twenty-one (21) days post entry of an order approving this Motion on the morning of July 23, 2014.

26.     The Trustee will select the Winning Bid at the conclusion of the Auction that the Trustee believes to be the highest or best value for the Property.

27.     The Trustee reserves the right to select the best bid, even if not the highest bid. The Winning Bidder must complete and sign all agreements or other documents with the Trustee evidencing and containing the terms and conditions on which the winning bid was made before the Auction is concluded. In the event the Winning Bidder is different from the Stalking Horse Bidder identified in this Motion, the Trustee shall ascertain whether the Winning Bidder is an insider of the Debtor, whether the sale represents an arms-length transaction between the parties, made without fraud or collusion, and whether there has been any attempt by either party to take any unfair advantage of the other such that the Winning Bidder may be deem to be purchasing the Property in good faith pursuant to 11 U.S.C. § 363(m). The Trustee shall state these factual findings in any order approving the Sale that is submitted to the Court.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

28.     If for any reason the Winning Bidder fails to consummate the Sale of the Property, the offeror of the second highest or best bid (subject to the same reservations) will automatically be deemed to have submitted the highest and best bid, and the Trustee is authorized to effect the Sale of the Property to such offeror without further order from the bankruptcy court. If such failure to consummate the purchase of the Property is the fault of the Winning Bidder, the Winning Bidder's deposit shall be forfeited to the Trustee, and the Trustee specifically reserves the right to seek all available damages from the defaulting bidder.

29.     The Trustee reserves the right to: *(i)* impose, at or before the Auction, additional terms and conditions on a Sale of the Property; *(ii)* extend the deadlines from those set forth herein, adjourn the Auction at the Auction; *(iii)* withdraw the Property, or any part of the Property, from Sale at any time before or during the Auction, and to make subsequent attempts to market the same; and *(iv)* reject all bids if, in the Trustee's reasonable judgment, no bid is for a fair and adequate price.

**D.     Notice of Auction and Bidding Procedures, Sale Motion and Sale Hearing**

30.     Within three (3) business days after the entry of the Bidding Procedures Order, the Trustee shall serve, via first-class U.S. mail, or electronic mail, a notice of these Bidding Procedures, the Motion and the Sale Hearing, in such form as the Court shall approve (the "**Sale Notice**"),[4] on the following entities: *(i)* all persons that were contacted by the Trustee or his advisors, or known by the Trustee to have been contacted by the Debtor or its advisors in connection with the marketing and Sale process for the Property; *(ii)* the Broker approved by this Court for purposes of dissemination to interested parties; *(iii)* all other prospective bidders and

---

[4]     The proposed form of Notice is annexed hereto and incorporated herein as **Exhibit B** .

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

parties-in-interest upon written request to the Trustee; *(iv)* all entities on the creditor matrix; and *(v)* all persons required pursuant to Bankruptcy Rules 6004(a), 6004(c), 6006(c) and 9014.

31. In addition, the Trustee, in the exercise of his reasonable business judgment, shall make known the availability of the Property through whatever means appear most suitable to the Trustee in the exercise of his business judgment, including, if appropriate, publication in a newspaper of general circulation and any applicable trade journals. The Trustee submits that service and publication of the Sale Notice constitutes good and sufficient notice, pursuant to Bankruptcy Rule 2002, of the Bidding Procedures, the Auction, the Bidding Procedures Order, the Sale Motion and the Sale Hearing (and any proceedings to be held thereon) on all known and unknown creditors and parties-in-interest, including all persons entitled to service pursuant to Bankruptcy Rules 6004(a), 6004(c), 6006(c) and 9014.

32. Objections, if any, to the Bidding Procedures Order shall be in writing, shall conform to the Bankruptcy Rules, the Local Rules and orders of the Bankruptcy Court, shall set forth: *(i)* the nature of the objector's claims against or interests in the Debtor's Estate; *(ii)* the basis for the objection; *(iii)* the specific grounds therefor; and *(iv)* all evidence in support of said objection, and shall be filed and served so as to be received on or prior to two business days before the hearing on the bid procedures. Such objections shall be served on all parties in interest on the Master Service List whether by CM/ECF or first class mail, postage pre-paid. The Trustee proposes that any person objecting to the Bid Procedures Motion that has not complied with the requirements of this paragraph shall not be heard at the Hearing on the Bid Procedures. In any event, such objecting party shall be present at the hearing in order to prosecute the objection.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

E.     **Sale Hearing**

33.     The Trustee proposes that the Sale Hearing to consider the relief requested in the Sale Motion to consider whether to approve the Winning Bidder(s) (the "**Sale Hearing**") shall be held after the conclusion of the Auction during the afternoon of July 23, 2014, at the United States Bankruptcy Court, 299 East Broward Boulevard, Courtroom # 308, Ft. Lauderdale, Florida 33301, or at such other time as the Court may determine. The Trustee may seek adjournment of the Sale or the Sale Hearing without further notice. The Trustee shall file with the Court appropriate notices of adjournment with respect to any such adjournment.

## AUTHORITY FOR RELIEF REQUESTED

34.     The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g., In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Resources, Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . [Trustee's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."). To that end, courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. *See id.* (such procedures "encourage bidding and maximize the value of the debtor's assets").

35.     Historically, where such stalking horse bids exist, bankruptcy courts have approved bid protections similar to those proposed pursuant to the Bidding Procedures proposed here under the "business judgment rule," under which the courts defer to the actions of

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

corporations taken in good faith and in the exercise of honest judgment. *See, e.g., In re 955 Fifth Ave. Associates, L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992).

## NO PRIOR REQUEST

36.     No previous request for the requested relief has been made to this or any other court.

## CONCLUSION

37.     The Trustee believes that the Sales Price negotiated with the Stalking Horse Bidder is more than reasonable given the value of the Property, the good faith of the Stalking Horse Bidder, and the listing of the Property with the general public.   The Trustee further asserts that the Bidding Procedures provide a necessary and actual benefit to the Debtor's Estate, by subjecting the Sale to higher and better offers.   Moreover, the Bidding Procedures establish the parameters under which the value of the Property may be tested at an Auction.   The terms and conditions of the Auction will enable the Trustee to realize the maximum value of the Property, and thus ensure that the Auction is in the best interests of the Debtor, its Estate, and its creditors.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

**WHEREFORE,** the Trustee respectfully requests the entry of the order: *(i)* authorizing the sale of the Property free of liens, claims encumbrances or interests pursuant to 11 U.S.C. §363, subject to higher and better offers; *(ii)* approving the Stalking Horse Bidder and the Sales Contract; *(iii)* establishing Bidding Procedures; *(iv)* approving the form and manner of notice; *(v)* scheduling a hearing date to consider approval of Sale; and (vi) granting any other and further relief that this Court deems just and proper.

Dated: June 11, 2014                          Respectfully Submitted,

                                              **AKERMAN, LLP**
                                              *Proposed Attorneys for Chapter 7 Trustee*
                                              350 East Las Olas, Blvd., Suite 1600
                                              Ft. Lauderdale, Florida 33301
                                              Tel: (954) 463-2700 / Fax: (954) 463-2224

                                              By:    /s/ *Eyal Berger*
                                                  Eyal Berger, Esq.
                                                  Florida Bar No. 11069
                                                  eyal.berger@akerman.com
                                                  Catherine Douglas, Esq.
                                                  Fla. Bar No. 85843
                                                  catherine.douglas@akerman.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via CM/ECF electronic mail and/or U.S. mail this June 11, 2014 to all parties listed on the attached service list.

By: _/s/ Eyal Berger_
Eyal Berger

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

## SERVICE LIST

**14-13218-JKO Notice will be electronically mailed to:**

Daniel G Gass, Esq on behalf of Creditor Monique Mathieu
dannycpalaw@bellsouth.net, paralegal@nym.hush.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Leslie S Osborne
osbornetrustee@kennethrappaportlawoffice.com,
lso@trustesolutions.com;lo@trustesolutions.net

Lawrence E Pecan on behalf of Interested Party Lossen Financial Inc.
lpecan@marshallgrant.com, efile@marshallgrant.com;mg197ecfbox@gmail.com

Zana Michelle Scarlett on behalf of U.S. Trustee Office of the US Trustee
Zana.M.Scarlett@usdoj.gov

Sherri B. Simpson on behalf of Debtor Skiview II Inc., a Delaware corporation
sbsecf@gmail.com, bklaw9999@gmail.com;bklaw99@aol.com

**14-13218-JKO Notice will not be electronically mailed to:**

John A. Farnsworth
75B Walnut Street
Clinton, MA 01510

SunTrust Mortgage, Inc.
Attn: Stephanie Karifias, Secretary
1001 Semmes Avenue
Richmond, VA 23224
(VIA CERTIFIED MAIL)

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

```
Label Matrix for local noticing        Lossen Financial Inc.                Skiview II Inc., a Delaware corporation
113C-0                                 c/o Robert Dziurgot                  1915 N.E. 45 St.
Case 14-13218-JKO                      1915 NE 45 St #101                   Ste 101
Southern District of Florida           Ft Lauderdale, FL 33308-5118         Fort Lauderdale, FL 33308-5118
Fort Lauderdale
Wed Jun 11 13:31:20 EDT 2014

Chase Home Finance, LLC                Florida Dept of Revenue              GA Design and Development, Inc.
Attn: Bankruptcy Dept.                 BANKRUPTCY SECTION                   POB 70777
Mail Code OH1-0472                     POB 6668                            Fort Lauderdale, FL 33307-0777
3415 Vision Dr.                        Tallahassee, FL 32314-6668
Columbus, OH 43219-6009

Greenspoon Marder, P.A.                Internal Revenue Service             Investment Group Florida Realty Inc.
Trade Centre South, # 700              Centralized Insolvency Operation     2881 E. Oakland Park Blvd
100 W. Cypress Creek Road              POB 7346                            Ste 421
Fort Lauderdale, FL 33309-2112         Philadelphia, PA 19101-7346          Fort Lauderdale, FL 33306-1813

John A. Farnsworth                     Law Offices Of Daniel C. Consuegra   Office of the US Trustee
75 B Walnut Street                     9204 King Palm Dr.                   51 S.W. 1st Ave.
Clinton, MA 01510-2611                 Tampa, FL 33619-8331                 Suite 1204
                                                                           Miami, FL 33130-1614

Robert Armistead                       Robert Dziurgot                      Robert G. Armistead
2415 NE 8 St                           1915 NE 45 St                        2415 NE 8 St.
Fort Lauderdale, FL 33304-3519         Ste 101                             Fort Lauderdale, FL 33304-3519
                                       Fort Lauderdale, FL 33308-5118

SunTrust Mortgage, Inc.                Jason Welt                           John A. Farnsworth
Attention: Bankruptcy Dept             Trustee Realty Inc                   75B Walnut St
1001 Semmes Ave                        1776 N Pine Island Rd #221           Clinton, MA 01510-2611
Richmond, VA 23224-2245                Plantation, FL 33322-5223

John A. Farnsworth                     Leslie S Osborne                     Monique Mathieu
c/o Marc P. Barmat                     1300 N. Federal Hwy #203             2601 NE 11th Court
2255 Glades Rd #337W                   Boca Raton, FL 33432-2848            Fort Lauderdale, FL 33304-4505
Boca Raton, FL 33431-7379

Sherri B. Simpson                      End of Label Matrix
507 SE 11 Court                        Mailable recipients      21
Ft. Lauderdale, FL 33316-1145          Bypassed recipients       0
                                       Total                    21
```

EXHIBIT "A"



## "AS IS" Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

**FloridaRealtors**

| 1* | PARTIES: Leo Osborne , Ch. 7 Trustee for Skiview 11 Inc. | ("Seller"), |
|---|---|---|
| 2* | and     IRA Resources FOB Kim L. Schemling IRA | ("Buyer"), |

3 agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4 (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase and
5 any riders and addenda ("Contract"):
6 1. PROPERTY DESCRIPTION:
7*    (a) Street address, city, zip: 2415 NE 8 St. Fort Lauderdale, Fl.
8*    (b) Property is located in:    Broward    County, Florida. Real Property Tax ID No.:    5042013200600
9*    (c) Real Property: The legal description is
10      Sunrise 28 - 42 B Lot 12 Blk. 4
11
12      together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and attached
13      wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or by other terms
14      of this Contract.
15    (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items which
16      are owned by Seller and existing on the Property as of the date of the initial offer are included in the purchase:
17      range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s), drapery rods and
18      draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate and other access
19      devices, and storm shutters/panels ("Personal Property").
20*      Other Personal Property items included in this purchase are:
21
22      Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23*    (e) The following items are excluded from the purchase:
24

### PURCHASE PRICE AND CLOSING

25

| 26* | 2. | PURCHASE PRICE (U.S. currency): | $ | 500,000.00 |
|---|---|---|---|---|
| 27* | | (a) Initial deposit to be held in escrow in the amount of (checks subject to COLLECTION) | $ | 50,000.00 |
| 28 | | The initial deposit made payable and delivered to "Escrow Agent" named below | | |
| 29* | | (CHECK ONE): (i) ☒ accompanies offer or (ii) ☐ is to be made within _____ (if left blank, | | |
| 30 | | then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN OPTION (ii) | | |
| 31 | | SHALL BE DEEMED SELECTED. | | |
| 32* | | Escrow Agent Information: Name:    Zach Shelomith | | |
| 33* | | Address: 2699 Stirling Road # C401 Fort Lauderdale,Fl.33312 | | |
| 34* | | Phone:  954.210.8957   E-mail: zshelomith@lslawfirm.net Fax:   954.920.5371 | | |
| 35* | | (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10) | | |
| 36* | | days after Effective Date | $ | |
| 37 | | (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit") | | |
| 38* | | (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 | $ | |
| 39* | | (d) Other: | $ | |
| 40 | | (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire | | |
| 41* | | transfer or other COLLECTED funds | $ | 450000 |
| 42 | | NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S. | | |

43 3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:
44*    (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before _____
45*      _____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46      Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day the
47      counter-offer is delivered.
48    (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or initialed
49      and delivered this offer or final counter-offer ("Effective Date").
50 4. CLOSING DATE: Unless modified by other provisions of this Contract, the closing of this transaction shall occur and
51    the closing documents required to be furnished by each party pursuant to this Contract shall be delivered ("Closing") on
52*      7 days from court order   ("Closing Date"), at the time established by the Closing Agent.
53 5. EXTENSION OF CLOSING DATE:
54    (a) If Closing funds from Buyer's lender(s) are not available at time of Closing due to Truth In Lending Act (TILA) notice
55      requirements, Closing shall be extended for such period necessary to satisfy TILA notice requirements, not to
56      exceed 7 days.

Buyer's Initials  KS                     Page 1 of 11                    Seller's Initials _____  _____
FloridaRealtors/FloridaBar-ASIS-2  Rev.8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Cheryl Kane - Intercoastal Realty  Inc] www.transactiondesk.com.

Instanet forms

57  (b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes: (i)
58      disruption of utilities or other services essential for Closing or (ii) Hazard, Wind, Flood or Homeowners'
59      insurance, to become unavailable prior to Closing, Closing shall be extended a reasonable time up to 3 days after restoration
60      of utilities and other services essential to Closing and availability of applicable Hazard, Wind, Flood or
61      Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not occurred
62 *    within _____ (if left blank, then 14) days after Closing Date, then either party may terminate this Contract by
63      delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby releasing Buyer and
64      Seller from all further obligations under this Contract.
65  6.  **OCCUPANCY AND POSSESSION:**
66      (a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the
67          Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all
68          personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and
69          codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the
70          Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be
71          deemed to have accepted the Property in its existing condition as of time of taking occupancy.
72 *    (b) ☐ CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING. If Property is
73          subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts
74          and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be
75          delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the
76          lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of
77          written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be
78          refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel
79          Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied
80          by Seller after Closing, see Rider U, POST-CLOSING OCCUPANCY BY SELLER.
81 *  7.  **ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this
82 *      Contract; ☒ may assign but not be released from liability under this Contract; or ☐ may not assign this Contract.

83                                              **FINANCING**

84  8.  **FINANCING:**
85 *    ☒ (a) Buyer will pay cash or may obtain a loan for the purchase of the Property. There is no financing contingency to
86          Buyer's obligation to close.
87 *    ☐ (b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☐ conventional ☐ FHA ☐ VA
88 *      or ☐ other _____ (describe) loan on the following terms within _____ (if left blank, then 30) days after
89 *      Effective Date ("Loan Commitment Date") for (CHECK ONE): ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate loan in
90 *      the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing
91 *      rate based upon Buyer's creditworthiness), and for a term of _____(if left blank, then 30) years ("Financing").

92 *    Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective
93      Date and use good faith and diligent effort to obtain a written loan commitment for the Financing ("Loan Commitment")
94      and thereafter to close this Contract. Buyer shall keep Seller and Broker fully informed about the status of mortgage
95      loan application and Loan Commitment and authorizes Buyer's mortgage broker and Buyer's lender to disclose such
96      status and progress to Seller and Broker.
97
98      Upon Buyer's receipt of Loan Commitment, Buyer shall provide written notice of same to Seller. If Buyer does not
99      receive Loan Commitment by Loan Commitment Date, then thereafter either party may cancel this Contract up to the
100     earlier of:
101             (i) Buyer's delivery of written notice to Seller that Buyer has either received Loan Commitment or elected to
102                 waive the financing contingency of this Contract; or
103             (ii) 7 days prior to Closing Date.

104     If either party timely cancels this Contract pursuant to this Paragraph 8 and Buyer is not in default under the terms of
105     this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under
106     this Contract. If neither party has timely canceled this Contract pursuant to this Paragraph 8, then this financing
107     contingency shall be deemed waived by Buyer.

108     If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not thereafter close, the
109     Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default; (2) Property related conditions of the
110     Loan Commitment have not been met (except when such conditions are waived by other provisions of this Contract); (3)
111     appraisal of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Commitment; or (4) the
112     loan is not funded due to financial failure of Buyer's lender, in which event(s) the Deposit shall be returned to Buyer,
113     thereby releasing Buyer and Seller from all further obligations under this Contract.

Buyer's Initials   KS                              Page 2 of 11                    Seller's Initials _____ _____
FloridaRealtors/FloridaBar-ASIS-2   Rev.8/13 © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.

This software is licensed to [Cheryl Kane - Intercoastal Realty  Inc] www.transactiondesk.com.        Instanet forms

114 * ☐ (c) Assumption of existing mortgage (see rider for terms).
115 * ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

116 **CLOSING COSTS, FEES AND CHARGES**

117 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
118 **(a) COSTS TO BE PAID BY SELLER:**
119 • Documentary stamp taxes and surtax on deed, if any      • HOA/Condominium Association estoppel fees
120 • Owner's Policy and Charges (if Paragraph 9(c) (i) is checked)   • Recording and other fees needed to cure title
121 • Title search charges (if Paragraph 9(c) (iii) is checked)    • Seller's attorneys' fees
122 * • Other:_____
123 If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11 a
124 sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at Closing. If
125 actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay such actual
126 costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
127 **(b) COSTS TO BE PAID BY BUYER:**
128 • Taxes and recording fees on notes and mortgages      • Loan expenses
129 • Recording fees for deed and financing statements      • Appraisal fees
130 • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)   • Buyer's Inspections
131 • Survey (and elevation certification, if required)      • Buyer's attorneys' fees
132 • Lender's title policy and endorsements          • All property related insurance
133 • HOA/Condominium Association application/transfer fees   • Owner's Policy Premium (if Paragraph
134                                9 (c) (iii) is checked.)
135 * • Other:_____
136 * **(c) TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 5) days prior to Closing Date, a title
137 insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as
138 exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see
139 STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title insurance
140 covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
141 The owner's title policy premium, title search, municipal lien search and closing services (collectively, "Owner's
142 Policy and Charges") shall be paid, as set forth below
143 **(CHECK ONE):**
144 * ☐ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges (but not including charges for
145 closing services related to Buyer's lender's policy and endorsements and loan closing, which amounts shall be paid
146 by Buyer to Closing Agent or such other provider(s) as Buyer may select); or
147 * ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
148 services related to Buyer's lender's policy, endorsements, and loan closing; or
149 * ☒ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller shall furnish a copy of a prior owner's policy of
150 title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which
151 is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien
152 search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and if
153 * applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $ _____ (if left blank,
154 then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.
155 **(d) SURVEY:** At least 5 days prior to Closing, Buyer may, at Buyer's expense, have the Real Property surveyed and
156 certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall
157 be furnished to Buyer and Closing Agent within 5 days after Effective Date.
158 * **(e) HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
159 * _____ at a cost not to exceed $_____. A home
160 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
161 appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
162 **(f) SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
163 ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
164 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
165 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed
166 on the Property before Closing. Buyer shall pay all other assessments. If special assessments may be paid in
167 installments **(CHECK ONE):**
168 * ☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
169 Installments prepaid or due for the year of Closing shall be prorated.
170 * ☐ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
171 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.

This software is licensed to [Cheryl Kone - Intercoastal Realty Inc] www.transactiondesk.com.

Instanet
forms

172    This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD)
173    pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

DISCLOSURES

**10. DISCLOSURES:**

(a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

(b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller does not know of any improvements made to the Property which were made without required permits or made pursuant to permits which have not been properly closed.

(c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or desires additional information regarding mold, Buyer should contact an appropriate professional.

(d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and /or flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance through the National Flood Insurance Program, Buyer may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone designation of Property. The National Flood Insurance Reform Act of 2012 (referred to as Biggert-Waters 2012) may phase in actuarial rating of pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures (residential structures in which the insured or spouse does not reside for at least 80% of the year) and an elevation certificate may be required for actuarial rating.

(e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure required by Section 553.996, F.S.

(f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is mandatory.

(g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

(h) **PROPERTY TAX DISCLOSURE SUMMARY: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.**

(i) **FIRPTA TAX WITHHOLDING:** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to FIRPTA.

(j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence, Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation.

PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS

**11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement").

Buyer's Initials _____ _____    Page 4 of 11    Seller's Initials _____ _____
FloridaRealtors/FloridaBar-ASIS-2  Rev.8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Cheryl Kane - Intercoastal Realty  Inc] www.transactiondesk.com.



228   12. **PROPERTY INSPECTION; RIGHT TO CANCEL:**
229 *     (a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have ___0___ (if left blank, then 15) days*
230        *after Effective Date ("Inspection Period") within which to have such inspections of the Property performed*
231        *as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the*
232        *Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such*
233        *election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the*
234        *Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further*
235        *obligations under this Contract; however, Buyer shall be responsible for prompt payment for such*
236        *inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and*
237        *shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall*
238        *survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer*
239        *accepts the physical condition of the Property and any violation of governmental, building, environmental,*
240        *and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance*
241        *Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's*
242        *lender.*
243     (b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to
244        time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up
245        walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the
246        Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement
247        and has met all other contractual obligations.
248     (c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of
249        the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written
250        documentation or other information in Seller's possession, knowledge, or control relating to improvements to the
251        Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with
252        Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's
253        obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents
254        necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling
255        such obligation, Seller shall not be required to expend, or become obligated to expend, any money.
256     (d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost,
257        Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

258                                 **ESCROW AGENT AND BROKER**

259   13. **ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and
260      other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the
261      State of Florida and, subject to COLLECTION, disburse them in accordance with terms and conditions of this Contract.
262      Failure to become COLLECTED shall not excuse Buyer's performance. When conflicting demands for the
263      Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions
264      permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this
265      Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its
266      disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or
267      Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents
268      a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such
269      action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously
270      delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as
271      amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow
272      disbursement order.
273      Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in
274      any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's
275      fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be
276      liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful
277      breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this
278      Contract.
279   14. **PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square
280      footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals
281      for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction
282      contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all
283      representations (oral, written or otherwise) by Broker are based on Seller representations or public records. BUYER
284      AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES
285      FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT
286      PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.

FloridaRealtors/FloridaBar-ASIS-2  Rev.8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Cheryl Kane - Intercoastal Realty Inc] www.transactiondesk.com.



287 Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases
288 Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs
289 and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers,
290 directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by
291 Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii)
292 Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at
293 Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended,
294 including Broker's referral, recommendation or retention of any vendor for, or on behalf of Indemnifying Party; (iv)
295 products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by
296 any such vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective
297 vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will
298 not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14,
299 Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

300                                    DEFAULT AND DISPUTE RESOLUTION

301 **15. DEFAULT:**
302 (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including
303 payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the
304 account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full
305 settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under this
306 Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights
307 under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split
308 equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be
309 greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.
310 (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable
311 diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to
312 receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach,
313 and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.
314 This Paragraph 15 shall survive Closing or termination of this Contract.
315 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller
316 arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as
317 follows:
318 (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
319 resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
320 16(b).
321 (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
322 Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The
323 mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought
324 without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be
325 resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall
326 survive Closing or termination of this Contract.
327 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by
328 this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
329 conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
330 from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation.
331 This Paragraph 17 shall survive Closing or termination of this Contract.

332                          STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

333 **18. STANDARDS:**
334    A. TITLE:
335 (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph
336 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and
337 delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing
338 and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the
339 Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the
340 following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and
341 requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise
342 common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted
343 public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear
344 or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f)

FloridaRealtors/FloridaBar-ASIS-2  Rev.8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Cheryl Kane - Intercostal Realty Inc] www.transactiondesk.com.



## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

345 assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, none
346 prevent use of Property for RESIDENTIAL PURPOSES. If there exists at Closing any violation of items identified in (b)
347 – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable
348 Title Standards adopted by authority of The Florida Bar and in accordance with law.
349 (ii) TITLE EXAMINATION: Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in
350 writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered
351 to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to
352 examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's
353 notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to
354 have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with
355 proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if
356 Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects
357 within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a)
358 extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use
359 reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with
360 existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days
361 after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and
362 receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. If
363 after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this
364 Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all
365 further obligations under this Contract.
366 B.  SURVEY: If Survey discloses encroachments on the Real Property or that improvements located thereon encroach
367 on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable governmental
368 regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters,
369 together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer
370 timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title
371 defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's
372 request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the
373 extent the affirmations therein are true and correct.
374 C.  INGRESS AND EGRESS: Seller represents that there is ingress and egress to the Real Property and title to the
375 Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
376 D.  LEASE INFORMATION: Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
377 tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security deposits
378 paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s) the same
379 information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit and Buyer may
380 thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or Seller's affidavit, if any,
381 differ materially from Seller's representations and lease(s) provided pursuant to Paragraph 6, or if tenant(s)/occupant(s)
382 fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller within 5 days after receipt of such
383 information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit,
384 thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and
385 assign all leases to Buyer who shall assume Seller's obligations thereunder.
386 E.  LIENS: Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing statement,
387 claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or repairs to the Real
388 Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within
389 that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors,
390 subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general
391 contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs
392 which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.
393 F.  TIME: Calendar days shall be used in computing time periods. Time is of the essence in this Contract.
394 Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates
395 specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur on a
396 Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property is
397 located) of the next business day.
398 G.  FORCE MAJEURE: Buyer or Seller shall not be required to perform any obligation under this Contract or be liable
399 to each other for damages so long as performance or non-performance of the obligation is delayed, caused or
400 prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God, unusual
401 transportation delays, wars, insurrections, acts of terrorism, and any other cause not reasonably within control of Buyer
402 or Seller, and which, by: exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to
403 prevent or overcome. All time periods, including Closing Date, will be extended for the period that the Force Majeure
404 prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent performance

Buyer's Initials _____      Page 7 of 11      Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-2  Rev.8/13 © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.

This software is licensed to [Cheryl Kane - Intercoastal Realty  Inc] www.transactiondesk.com.



## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

under this Contract more than 14 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

**H.  CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.

**I.  CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**

**(i)  LOCATION:** Closing will take place in the county where the Real Property is located at the office of the attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title insurance, or, if no title insurance, designated by Seller. Closing may be conducted by mail or electronic means.

**(ii)  CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s), owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable the survey, flood elevation certification, and documents required by Buyer's lender.

**(iii)  PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, subject to **COLLECTION** of all closing funds, disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

**J.  ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

**K.  PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current year's tax with due allowance made for maximum allowable discount, homestead and other exemptions. If Closing occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive Closing.

**L.  ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a walk-through (or follow-up walk-through if necessary) prior to Closing.

**M.  RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated cost to complete restoration (not to exceed 1.5% of Purchase Price), will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

This software is licensed to [Cheryl Kane - Intercoastal Realty Inc] www.transactiondesk.com.



## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

**N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

**P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

**Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S. COLLECTION or COLLECTED:** "COLLECTION" or "COLLECTED" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.

**T. LOAN COMMITMENT:** "Loan Commitment" means a statement by the lender setting forth the terms and conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower. Neither a pre-approval letter nor a prequalification letter shall be deemed a Loan Commitment for purposes of this Contract.

**U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county where the Real Property is located.

**V. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code requires the buyer of the real property to withhold 10% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate from the IRS authorizing a reduced amount of withholding. Due to the complexity and potential risks of FIRPTA, Buyer and Seller should seek legal and tax advice regarding compliance, particularly if an "exemption" is claimed on the sale of residential property for $300,000 or less.

(i)  No withholding is required under Section 1445 if the Seller is not a "foreign person," provided Buyer accepts proof of same from Seller, which may include Buyer's receipt of certification of non-foreign status from Seller, signed under penalties of perjury, stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer shall withhold 10% of the amount realized by Seller on the transfer and timely remit said funds to the IRS.

(ii)  If Seller has received a Withholding Certificate from the IRS which provides for reduced or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the reduced sum, if any required, and timely remit said funds to the IRS.

(iii)  If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been received as of Closing, Buyer shall, at Closing, withhold 10% of the amount realized by Seller on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.

(iv)  In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for disbursement in accordance with the final determination of the IRS, as applicable.

This software is licensed to [Cheryl Kane - Intercoastal Realty Inc] www.transactiondesk.com.



STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

525 (v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms 8288
526 and 8288-A, as filed.
527 W. RESERVED
528 X. BUYER WAIVER OF CLAIMS: *To the extent permitted by law, Buyer waives any claims against Seller and*
529 *against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
530 *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
531 *subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer. This*
532 *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
533 *Closing.*
534 ADDENDA AND ADDITIONAL TERMS
535 19. ADDENDA: The following additional terms are included in the attached addenda or riders and incorporated into this
536 * Contract (Check if applicable):

☐ A. Condominium Rider          ☐ M. Defective Drywall             ☐ X. Kick-out Clause
☐ B. Homeowners' Assn.          ☐ N. Coastal Construction Control Line   ☐ Y. Seller's Attorney Approval
☐ C. Seller Financing           ☐ O. Insulation Disclosure         ☐ Z. Buyer's Attorney Approval
☐ D. Mortgage Assumption        ☐ P. Lead Based Paint Disclosure   ☐ AA.Licensee-Personal Interest in
☐ E. FHA/VA Financing              (Pre-1978 Housing)                  Property
☐ F. Appraisal Contingency      ☐ Q. Housing for Older Persons     ☐ BB.Binding Arbitration
☐ G. Short Sale                 ☐ R. Rezoning                      ☐ Other_____
☐ H. Homeowners'/Flood Ins.     ☐ S. Lease Purchase/ Lease Option     _____
☐ I.  RESERVED                  ☐ T. Pre-Closing Occupancy by Buyer   _____
☐ J. Interest-Bearing Acct.     ☐ U. Post-Closing Occupancy by Seller  _____
☐ K. RESERVED                   ☐ V. Sale of Buyer's Property
☐ L. RESERVED                   ☐ W. Back-up Contract

537 * 20. ADDITIONAL TERMS:
538 a. Sale shall be contingent upon U.S. Bankruptcy Court approval.  Bankruptcy sale is
539 "as is" and "where is" and shall be free and clear of any and all liens, claims and
540 encumbrances.

541 b. Trustee will file Motion to Approve Sale, pursuant to 11 U.S.C. § 363, within 3 days
542 after execution of this Agreement.  Sale is subject to higher and better offers
543 presented to the Trustee and approved by the U.S. Bankruptcy Court, in accordance with
544 applicable bankruptcy law.
545

546 c. Purchaser shall be entitled to a "break up fee" in the event that the Bankruptcy
547 Court finds that a higher and better offer has been made, accepted and approved.  The
548 "break up fee" shall be $5,000.00 (1% of the contract price), in addition to the
549 reimbursment of any reasonable costs incurred by the Purchaser with regard to her due
550 diligence into the Property.
551

552 d. Closing date shall be no later than 7 days after the entry of an order approving the
553 sale, and Purchaser shall have teh option of closing sooner, upon entry of an order
      approving the sale.

554 COUNTER-OFFER/REJECTION

555 * ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and deliver
556 a copy of the acceptance to Seller).
557 * ☐ Seller rejects Buyer's offer.

558 THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF
559 AN ATTORNEY PRIOR TO SIGNING.

560 THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.

561 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms and*
562 *conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions should be*
563 *negotiated based upon the respective interests, objectives and bargaining positions of all interested persons.*

This software is licensed to [Cheryl Kano – Intercoastal Realty Inc] www.transactiondesk.com.

Instanet
forms

584 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO BE
585 COMPLETED.
586
587
588* Buyer: _____   Date: 6/5/14
569      IRA Resources BOB Kim A. Schmehling IRA
570
571
572
573* Buyer: _____   Date: _____
574
575
576
577
578* Seller: _____   Date: _____
579
580
581
582
583* Seller: _____   Date: _____
584
585 Buyer's address for purposes of notice          KS          Seller's address for purposes of notice
586*      3850 Galt Ocean Drive #1608          _____
587*      Fort Lauderdale, Fl.          _____
588*               33308          _____
589
590 BROKER: Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled to
591 compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent to
592 disburse at Closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties
593 and cooperative agreements between the Brokers, except to the extent Broker has retained such fees from the escrowed
594 funds. This Contract shall not modify any MLS or other offer of compensation made by Seller or Listing Broker to
595 Cooperating Brokers.
596
597*          Cheryl Kane                                Jason Welt
598  Cooperating Sales Associate, if any          Listing Sales Associate
599
600*        Intercoastal Realty 3%                     Trustee Realty
601  Cooperating Broker, if any          Listing Broker

FloridaRealtors/FloridaBar-ASIS-2   Rev.8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Cheryl Kane - Intercoastal Realty Inc] www.transactiondesk.com.

*Instanet*
*forms*

# EXHIBIT "B"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

In re:                                                    Case No. 14-13218-JKO

SKIVIEW II, INC.,                                         Chapter 7

     Debtor.
_____/

## NOTICE OF SALE, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.     On July 23, 2014, Les S. Osborne, the Chapter 7 Trustee (the **"Trustee"**) for the estate of Skiview II, Inc. (the **"Debtor"**) filed his motion (the **"Motion"**) for entry of an order: *(i)* authorizing the sale of real property located at 2415 NE 8th Street, Fort Lauderdale, Florida 33304 (the **"Property"**) free of liens, claims encumbrances or interests pursuant to 11 U.S.C. §363, subject to higher and better offers; *(ii)* approving the contract of sale and the stalking horse bidder; *(iii)* establishing bidding procedures; *(iv)* approving form and manner of notice; and *(v)* scheduling a hearing date to consider approval of sale.

2.     On June ---, 2014, the United States Bankruptcy Court for the Southern District of Florida entered an order establishing the bidding procedures (the **"Bidding Procedures Order"**) (ECF No. --).

**A.**     **The Sale of the Property**

3.     Subject to higher and better offers as set forth below, the Trustee proposes to sell the Property for $500,000 to IRA Resources FOB Kim L. Schmeling IRA (the **"Stalking Horse Bidder"**) who has submitted an earnest money deposit for the purchase of the Property in the amount of ten percent of the purchase price, or $50,000 (the **"Sale"**). The Property is being sold

as is, where is and how is, with no warranties, representations or guaranties of any kind or nature, expressed or implied.[1] The proposed sales contract (the "**Sales Contract**") is annexed as **Exhibit A** to the Motion.

**B.      The Bidding Procedures**

4.      The Bidding Procedures Order provides for the process by which the Trustee will seek higher and better bids to obtain and select the highest and best bid for the Property (the "**Winning Bidder**").

5.      Any party interested in purchasing the Property must file a notice of competing bid (the "**Competing Bid**") with the Bankruptcy Court, the Office of the United States Trustee, and the Chapter 7 Trustee no later than 4:00 p.m., July 22, 2014.

6.      A competing bidder shall submit to the Chapter 7 Trustee a $50,000 good faith deposit, an offer, in writing, in an amount greater than or equal to $510,000, and shall submit financial information, including redacted financial statements, demonstrating the financial wherewithal of the competing bidder to complete the Sale. Competing bidders may not substantially deviate from the terms of the Sales Contract.

7.      The alternative minimum bid amount is $510,000 (the "**Alternate Minimum Bid**").

**C.      The Auction**

8.      If the Trustee receives a qualified Alternative Minimum Bid, the Trustee shall conduct an private auction at the offices of counsel to the Trustee, Akerman, LLP, located at 350 East Las Olas Blvd., Suite 1600, Fort Lauderdale, Florida on **July 23, 2014** at **10:00 a.m. (the**

---

[1]      For specific information concerning the Property, which is accurate to the best of the Trustee's knowledge, information or belief, interested parties are directed to contact the Court appointed Real Estate Professional for the sale, Mr. Jason Welt, 954-803-0790.

"Auction"). Minimum incremental bids are to be left to the discretion of the Trustee while conducting the Auction.

9. The Trustee will select the winning bidder (the **"Winning Bid"**) at the conclusion of the Auction that the Trustee believes to be the highest or best value for the Property.

10. The Trustee reserves the right to select the best bid, even if not the highest bid. The Winning Bidder must complete and sign all agreements or other documents with the Trustee evidencing and containing the terms and conditions on which the winning bid was made before the Auction is concluded. In the event the Winning Bidder is different from the Stalking Horse Bidder, the Trustee shall ascertain whether the Winning Bidder is an insider of the Debtor, whether the sale represents an arms-length transaction between the parties, made without fraud or collusion, and whether there has been any attempt by either party to take any unfair advantage of the other such that the Winning Bidder may be deem to be purchasing the Property in good faith pursuant to 11 U.S.C. § 363(m). The Trustee shall state these factual findings in any order approving the Sale that is submitted to the Court.

11. If for any reason the Winning Bidder fails to consummate the Sale of the Property, the offeror of the second highest or best bid (subject to the same reservations) will automatically be deemed to have submitted the highest and best bid, and the Trustee is authorized to effect the Sale of the Property to such offeror without further order from the bankruptcy court. If such failure to consummate the purchase of the Property is the fault of the Winning Bidder, the Winning Bidder's deposit shall be forfeited to the Trustee, and the Trustee specifically reserves the right to seek all available damages from the defaulting bidder.

{29015636;1}

- 3 -

12.     The Trustee reserves the right to: *(i)* impose, at or before the Auction, additional terms and conditions on a Sale of the Property; *(ii)* extend the deadlines from those set forth herein, adjourn the Auction at the Auction; *(iii)* withdraw the Property, or any part of the Property, from Sale at any time before or during the Auction, and to make subsequent attempts to market the same; and *(iv)* reject all bids if, in the Trustee's reasonable judgment, no bid is for a fair and adequate price.

13.     If failure to consummate the Sale is the fault of the Winning Bidder, the Trustee on behalf of the Debtor's estate shall be entitled to retain the deposit.

**D.     The Sale Hearing**

14.     A hearing to confirm the sale of the Property free and clear of all liens, claims, and encumbrances will be conducted before the Honorable John K. Olson, United States Bankruptcy Judge, Courtroom 301, 299 East Broward Boulevard, Fort Lauderdale, FL 33301 on July 23, 2014 at --:-- p.m. (the "**Sale Hearing**"). The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest other than the announcement of the continuance in open court on the date scheduled for the Sale Hearing.

15.     Objections, if any, to the sale of the Property or the relief requested in the Motion must (a) be in writing; (b) comply with Bankruptcy Rules and Local Rules; (c) be file with the clerk of the Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division, East Broward Boulevard, Fort Lauderdale, FL 33301 (or electronically filed via CM/ECF), on or before the earlier of *(i)* seven days prior to the Auction; or (ii) July 16, 2014, or such earlier date and time as the Trustee may agree and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon on the Master Service List whether by CM/ECF or first class mail, postage pre-paid.